*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# OPINION

No. 04-09-00577-CR

Mark William **JOHNSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CR-8945
Honorable Raymond Angelini, Judge Presiding

Opinion by:    Rebecca Simmons, Justice
Concurring Opinion by:  Steven C. Hilbig, Justice

Sitting:        Rebecca Simmons, Justice
                Steven C. Hilbig, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  July 6, 2011

AFFIRMED

Mark William Johnson was convicted of aggravated robbery and sentenced to seventy-five years in prison.  Johnson appeals the judgment, asserting that the State failed to corroborate the testimony of an accomplice; the evidence is legally and factually insufficient to support the verdict; and the evidence is insufficient to support the enhancement allegation that he has a prior felony conviction.  We affirm the trial court's judgment.

**BACKGROUND**

Bryan Springs testified that on March 26, 2008, he and Johnson entered a restaurant in San Antonio to commit a robbery. Springs armed himself with a small gun and wore a ski mask, and Johnson had a revolver and covered his face with a rag. After entering the restaurant, Johnson went to the office, and Springs saw the manager putting money into a bag. When Johnson tried to get the manager's keys, a struggle ensued. During the struggle, the keys fell to the floor, and Springs recovered them. On his way out of the restaurant, Springs heard a gunshot. Springs located the manager's vehicle and drove away without Johnson. The police apprehended Springs after he crashed the vehicle. A gun was found near the scene of the crash, and a black ski mask was found in the front seat of the vehicle Springs was driving. At trial, Springs admitted he had a plea agreement with the State that provided he would receive a prison sentence of no more than twenty-five years in exchange for his testimony.

Simmons Allison, a manager of the restaurant, testified two men entered the restaurant while he was counting the day's receipts in his office. Both men had their faces covered and carried weapons. One of the gunmen came into his office, pointed a pistol at his head, and demanded the money. Allison complied, placing the money in a plastic bag. Allison testified the gunman left the office and then returned demanding his car keys. Allison began to struggle with the gunman, and the bag broke, strewing the money on the floor. He told the jury he felt a pain in his leg, fell down, and later discovered he had been shot in the leg.

Allison identified photographs taken by the restaurant's security camera, and a compact disc containing the photographs was entered into evidence.[1] The camera captured part of the struggle between Allison and the perpetrator, including images of the gunman with his mask

---

[1] Although the parties referred to the exhibit as a video, the exhibit is a series of photographs taken at approximately one-second intervals.

pulled down and most of his face exposed. Although neither party asked Allison at trial if he could identify his attacker, the jury viewed the images of the attack including the images of the gunman.

Tammi Sligh, a firearms examiner with the Bexar County Crime Lab, testified that the spent bullet removed from the victim's leg belonged to the .38 caliber class of ammunition. She explained that this meant she could not distinguish if it was a spent round of .38 caliber, .357 caliber, 9mm, or .380 caliber ammunition. Based on markings on the slug, she believed that the bullet may have been fired from a revolver. San Antonio police detective Kevin Nogle testified he went to an apartment the night of the robbery and talked with Johnson's girlfriend. He told the jury he found three rounds of .38 caliber ammunition in Johnson's dresser drawer.

The judge instructed the jury that Springs was an accomplice as a matter of law. The jury returned a guilty verdict, found the enhancement allegation that Johnson had a prior felony conviction to be "true," and sentenced Johnson to seventy-five years in prison.

### ACCOMPLICE WITNESS

A person may not be convicted based on the testimony of an accomplice unless there is other evidence, independent of the accomplice witness, that tends to connect the defendant to the crime. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2010) ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed . . . ."); *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997). Corroboration is not sufficient if it merely shows the commission of the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2010). "The corroborative evidence, however, need not be sufficient in itself to establish guilt, nor must it directly link the accused to the commission of the offense." *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008).

Rather, the independent "'evidence must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense.'" *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009) (quoting *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008)). We view the independent evidence tending to link the defendant to the crime in the light most favorable to the jury's verdict. *Brown*, 270 S.W.3d at 567.

The parties agree Springs was an accomplice; therefore, we must disregard his testimony in our analysis and determine whether other evidence tends to connect Johnson to the crime. The State contends the independent evidence consists of the surveillance photographs; the victim's testimony about the robbery; the slug recovered from the victim; the expert's testimony that the slug belonged in the class of .38 caliber ammunition; testimony that three live rounds of .38 caliber ammunition were found in Johnson's drawer; and testimony that the slug may have been fired from a revolver. Johnson argues this evidence is insufficient to "tend to connect" him to the crime.

Specifically, Johnson argues that the photographs do not connect him to the crime because they lack sufficient clarity or detail to permit identification of the person depicted. Although the quality of the surveillance photographs is mediocre,[2] the jury could use this evidence to compare the photographs to Johnson's appearance at trial. The photographs depict the gunman entering the restaurant, struggling with the manager, and retrieving the money that scattered when the money bag broke. The photographs show that the bandana that covered the gunman's lower face was pulled down during the struggle with Allison, and most of the

---

[2] Based on our review of the exhibit, it appears the camera was mounted high on a wall, not at eye-level. The pictures are black-and-white; the details are somewhat fuzzy; and the shading may not be accurate. However, the images reveal the perpetrator's face and hairline, as well as his body type and size.

gunman's face is revealed, including his eyes, nose, ears, and facial structure. The jury was thus able to view the photographs and compare them to Johnson's appearance at trial. Because we view corroborative evidence in the light most favorable to the jury's verdict, we hold that the surveillance photographs are sufficient independent evidence tending to connect Johnson to the robbery. *See Simmons v. State*, 282 S.W.2d 504, 509 (Tex. Crim. App. 2009) (holding the issue "is not how an appellate court would independently assess the non-accomplice evidence but whether a rational [jury] could conclude that the non-accomplice evidence 'tends to connect' [the] appellant to the offense"). Thus, we may consider the testimony of Brian Springs describing the robbery and identifying Johnson as his co-actor in assessing the sufficiency of the evidence.

The concurrence relies on the statements Springs made to Detective Jones the night of the incident to corroborate Springs's in-court testimony. Detective Jones testified that Springs told him that "White Boy" had participated in the robbery, and that Jones later linked Johnson to the nickname. Notably, the State never raised this theory on appeal and, consequently, Johnson has not had an opportunity to respond to it. We, however, will respond by declining to join the concurrence on this point, chiefly because we lack the authority to overrule the several cases from the Court of Criminal Appeals holding that an accomplice's prior, out-of-court statements cannot corroborate that same accomplice's in-court testimony.[3]

---

[3] *See Brown v. State*, 320 S.W.2d 845, 847 (Tex. Crim. App. 1959) (holding that an accomplice's prior writing of the defendant's license plate could not corroborate the accomplice's testimony at trial regarding the defendant's guilt, and noting "[a]n accomplice cannot corroborate himself by his own statements made to third persons"); *Smith v. State*, 124 S.W. 919, 920 (Tex. Crim. App. 1910) (holding that letters written between accomplices to adulterous intercourse could not "be regarded as evidence of corroboration"); *see also McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997) (acknowledging that "hearsay from an accomplice cannot corroborate the accomplice's trial testimony, i.e. an accomplice cannot corroborate himself by his own statements made to third persons"); *Beathard v. State*, 767 S.W.2d 423, 429 (Tex. Crim. App. 1989) ("Given these concerns over the witness's potential bias and inherent lack of credibility, a prior consistent statement made by that same witness fails to provide the additional degree of reliability that corroboration by *independent* evidence would provide and that Art. 38.14 requires.").

The purpose of article 38.14's requirement for corroborative evidence is to require more evidence for a conviction than the testimony of an accomplice who may have an incentive to be untruthful. "The rule reflects a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person." *Blake v. Smith*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998). "Thus there must simply be *some* non-accomplice evidence which *tends* to connect appellant to the commission of the offense alleged in the indictment." *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997).

The concurrence's reliance on *Bingham v. State*, 913 S.W.2d 208 (Tex. Crim. App. 1995), is misplaced. *Bingham* concerned the corroboration of a testifying accomplice by the out-of-court statements of *another* accomplice, not the out-of-court statements of the *same* accomplice. *See id.* at 212–13. This distinction was recognized in *Maynard v. State*, 166 S.W.3d 403 (Tex. App.—Austin 2005, pet. ref'd), which explained that although one accomplice's out-of-court statement may corroborate the in-court testimony of another accomplice, the out-of-court statement of a testifying accomplice could not be used to corroborate his own testimony. *Id.* at 413–14 & nn. 5–6. Here, the concurrence would hold that Springs's out-of-court statements to Detective Jones corroborates Springs's in-court testimony. The result of such a theory would defeat article 38.14's purpose, which is to require other, non-accomplice, inculpatory evidence to connect the accused to the commission of the offense.

The case of *McDuff v. State*, 939 S.W.2d 607 (Tex. Crim. App. 1997), which was decided after *Bingham*, is instructive. In *McDuff*, two men kidnapped a young woman at a car wash. The appellant and his accomplice sexually assaulted the victim, and then appellant struck her and placed her in the car trunk before dropping the accomplice off. The victim's body was never

found. In addition to the accomplice's testimony at trial, Officer Steglich testified that the accomplice told him about having been with the appellant when the girl was taken from the car wash and having accompanied appellant to a secluded spot before the accomplice was dropped off. A friend of the accomplice, Mr. Bedrich, testified the accomplice discussed the missing woman and said that the appellant had killed her, but that the accomplice was afraid to tell anyone. The first issue addressed by the Court of Criminal Appeals was whether there was sufficient evidence to corroborate the accomplice testimony. *Id.* at 612. Importantly, the court does not include the accomplice's out-of-court statements in its analysis of the corroborating evidence. If the concurring opinion is correct in its theory that an accomplice can corroborate his own statements, then the Court of Criminal Appeals missed the two strongest pieces of evidence in its analysis.

## LEGAL SUFFICIENCY

In his next point, Johnson contends the evidence is legally and factually insufficient to support the jury's verdict. However, after the briefs were submitted in this case, the Court of Criminal Appeals issued its opinion in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). Although only four judges joined in the plurality opinion, a majority of the judges agreed it is no longer appropriate to conduct a separate review for factual sufficiency in criminal appeals. *Brooks*, 323 S.W.3d at 912; *id.* at 926 (Cochran, J., concurring). Accordingly, we review the evidence to determine whether it is legally sufficient under the *Jackson v. Virginia* standard. *Brooks*, 323 S.W.3d at 912. Under that standard, we review the evidence for legal sufficiency by looking at all of the "evidence in the light most favorable [to] the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Prible v. State*, 175 S.W.3d 724, 729–30 (Tex. Crim. App. 2005), *cert.*

*denied*, 546 U.S. 962. "We resolve [any] inconsistencies in the testimony in favor of the verdict." *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). We defer to the jury's determination of the weight to be given to contradictory testimonial evidence because resolution of the conflict is often determined by the jurors' evaluation of the witnesses' credibility and demeanor. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).

Springs testified he and Johnson committed the robbery. The jury was able to view the surveillance photographs and could conclude that Johnson committed the offense depicted. Viewing the evidence in the light most favorable to the jury's verdict, this evidence was legally sufficient to support the jury's verdict.[4]

### ENHANCEMENT ALLEGATION

In his last issue, Johnson contends the evidence was insufficient to prove he was previously convicted of a felony and thus eligible for an enhanced sentence. *See* TEX. PENAL CODE ANN. § 12.42(c)(1) (West 2010) (minimum sentence for first-degree felony increased to fifteen years if defendant has previously been convicted of a felony). We disagree.

To meet its burden of proving a prior felony conviction, the State must demonstrate beyond a reasonable doubt that "(1) a prior conviction exists, and (2) the defendant is linked to that conviction." *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). Although the Court of Criminal Appeals indicates that the "preferred" method of proof is by way of a certified copy of a final judgment, "[n]o specific document or mode of proof is required to prove these two elements." *Id.*

In the indictment, the State alleged a single prior felony conviction, namely: "on or about the 4TH day of May, A.D., 1991, in Cause No. 90-CR-4048B, in Bexar County, Texas, the

---

[4] Because the evidence recited is legally sufficient to support the verdict, we do not discuss all the evidence that supports the verdict including Springs' comments to Detective Randy Jones.

defendant was convicted of the felony of AGGRAVATED ROBBERY WITH A DEADLY WEAPON." The State did not introduce any documents at trial to link Johnson to the conviction alleged in the enhancement allegation. Instead, it relied upon the testimony of George Saidler, who was a robbery detective with the San Antonio Police department in the early 1990s.

Saidler testified he investigated two aggravated robberies involving victims Nicole Yamin and Patricia DeWitty. Johnson admitted to Saidler that he participated in both robberies. Saidler testified Johnson was indicted under Cause No. 1990-CR-4048B for the robbery involving Yamin and under Cause No. 1990-CR-4061A for the robbery of Dewitty. Saidler told the jury Johnson pled guilty to both aggravated robberies and was found guilty. Saidler testified the convictions occurred on April 4, 1991.

Johnson's mother testified during the punishment phase and admitted Johnson had been sentenced to serve twelve years in prison for an aggravated robbery. She explained to the jury that another person with her son at the time of the robbery shot the robbery victim. This was an apparent reference to the facts involved in the aggravated robbery involving Yamin under Cause No. 1990-CR-4048B because DeWitty testified during the punishment phase and did not relate that she had been shot. Based on this testimony, the jury was free to conclude that the testimony of Johnson's mother concerning his conviction and sentence for aggravated robbery referred to Cause No. 1990-CR-4048B, the cause in which Yamin was the victim. Saidler's testimony and that of Johnson's mother were sufficient evidence for a reasonable jury to conclude a conviction existed.

Johnson contends that the evidence of his prior conviction is insufficient because Saidler did not explain the basis of his knowledge. Johnson failed to raise this objection in the trial court, and his complaint on this issue is waived. *See* TEX. R. APP. P. 33.1. Even if we were to

consider this complaint, Saidler testified he was the detective involved in the investigation of the robbery and Johnson confessed committing the robbery to him, and he knew Johnson pled guilty to the robbery. This testimony demonstrates Saidler had sufficient knowledge about the prior conviction to allow reliance upon his testimony by a rational jury, and to link Johnson to that conviction. Johnson's last point of error is overruled.

## CONCLUSION

There was sufficient evidence, independent of the accomplice's testimony, tending to connect Johnson to the aggravated robbery. Viewing the entire record in the light most favorable to the jury's verdict, there is sufficient evidence to support the jury's verdict. Also viewing the evidence as to the prior conviction in the light most favorable to the jury's verdict, there is sufficient evidence to support the jury's finding that Johnson had been previously convicted of the felony of aggravated robbery. The judgment of the trial court is affirmed.

Rebecca Simmons, Justice

Publish